## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 29 2018, 10:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Lawyer-Smith
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James L. Haas,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

October 29, 2018

Court of Appeals Case No.
18A-CR-772

Appeal from the Carroll Circuit Court

The Honorable Benjamin A. Diener, Judge

Trial Court Cause No.
08C01-1708-MR-1

**Najam, Judge.**

# Statement of the Case

James Haas appeals his conviction for murder, a felony, following a jury trial. He presents a single issue for our review, namely, whether the State presented sufficient evidence to support his conviction. We affirm.

# Facts and Procedural History

In August 2016, Tracy Houchin divorced her husband, Mark Houchin, after seventeen years of marriage. Tracy soon met Haas and began a relationship with him. In February 2017, Tracy moved into Haas' home in Carroll County. But, in June, Tracy told Mark that she was still in love with him. Tracy also told Haas about her feelings for Mark, and Tracy moved back in with Mark on June 24.

After Tracy broke up with Haas, he repeatedly called and texted her in an effort to get her back. Tracy asked Haas to stop contacting her, and she blocked him on her phone and on social media. But Haas left voicemails on Tracy's phone from different phones, and he posted Facebook messages directed at Tracy using his son's Facebook account. On July 15, Tracy and Mark went to the VFW for karaoke, and Haas was there. Haas bought everyone in the bar a shot and made a toast over a microphone referring to Tracy as an "angel" and recounting how Tracy had left him for Mark. Tr. Vol. 5 at 51. Tracy was "embarrassed," and she and Mark left the bar. *Id.* At some point that night, Haas and Mark had an "altercation." *Id.*

[4]     One evening in early August, Haas visited his brother Perry Haas, with whom Haas did not have a good relationship. Perry was not expecting Haas and was surprised to see him. Haas told Perry about Tracy and how she had left him to get back together with her ex-husband, Mark. Haas then asked Perry to go with him to Mark's house in Deer Creek to rob him, and Haas told Perry that Haas intended to "hurt" Mark. Tr. Vol. 6 at 29. Haas told Perry that he had been watching Mark's house for over a month to get to know Mark's and Tracy's schedules, and he intended to execute his plan with Perry early one morning after Tracy had left for the day. Haas also told Perry to bring extra clothes because, after leaving Mark's house, Haas intended to put all of their clothing into a bag and burn it in a burn barrel at his house. Perry did not agree to help Haas.

[5]     During the morning of August 10, after Tracy had left for work, Haas entered Mark's home and shot him twice in the head. Haas also stole some items from the home, including jewelry, photographs, a china bowl, and prescription medications belonging to Tracy. And Haas stole Mark's pistol, jewelry, and coins.

[6]     Afterwards, Haas called his stepdaughter, Kristen Gross, and asked her to come to his house because he had an "emergency." Tr. Vol. 5 at 82. When she got there, Haas asked her to drive him somewhere, but he would not tell her where. She agreed. Haas ultimately directed her to drive to a house in Deer Creek, and he instructed Gross to park across the street from the house. Haas got out of the car and put gloves on as he walked towards the house, which Gross later

learned belonged to Mark. Haas went inside the house for a short period of time, and when he exited the house, he had a yellow pad of paper in his hand. Haas got back into Gross' car, and she started driving. At some point, Gross figured out that Haas had murdered Mark, which he admitted to her, and she asked him what he had done with the body. Haas told her that the body was "still in there." *Id.* at 88. Haas also told her that he had thrown the stolen items into a river. When Gross got home, she told her wife about the murder.

[7] On August 11, Devin Wolf was wading in Rock Creek and found two pieces of jewelry and a loaded gun in the water. After Wolf had heard a news report about the murder, he turned those items into the police. On August 19, Levi Evans was wading in Rock Creek and found two necklaces, two bracelets, and a size 3XL red and black windbreaker with purple rubber gloves and .22 caliber shell casings in one of the pockets. Evans turned those items over to the police. Tracy identified the jewelry as hers, and forensic testing on the windbreaker revealed Mark's blood on the sleeve. Tracy later confirmed that Haas had purchased that windbreaker from their gym when they were still together.

[8] After he had heard about Mark's murder, Perry contacted Tony Lantz, an investigator with the local prosecutor's office, and told him what Haas had recently told him about his plan to take revenge on Mark. Perry gave a recorded statement.

The State charged Haas with murder, a felony. A jury found him guilty as charged. And the trial court entered judgment accordingly and sentenced Haas to fifty-five years executed. This appeal ensued.

## Discussion and Decision

Haas contends that the State presented insufficient evidence to support his conviction. In reviewing the sufficiency of the evidence, we consider only the evidence and reasonable inferences most favorable to the convictions, neither reweighing the evidence nor reassessing witness credibility. *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016). We will affirm the judgment unless no reasonable fact-finder could find the defendant guilty. *Id.*

Haas maintains that the evidence is insufficient because of a lack of "forensic or physical evidence" to "positively link him to the shooting" and because the witnesses against him lacked credibility. Appellant's Br. at 19-20. But Haas' argument amounts to a request that we reweigh the evidence and assess the credibility of the witnesses, which we cannot do. The State presented testimony from Perry that, one or two nights prior to Mark's murder, Haas asked Perry to help him break into Mark's house to steal things and to "hurt" Mark. Tr. Vol. 6 at 29. And Gross testified that, during the morning after Mark's murder, Haas confessed to shooting Mark. That evidence, even without considering the State's additional evidence, is sufficient to support Haas' conviction. Accordingly, we affirm his conviction for murder, a felony.

Affirmed.

Crone, J., and Pyle, J., concur.